SHELDON & CO. *v.* UNITED STATES (No. 138). CUSIMANO *v.* UNITED STATES (No. 139). KLIPSTEIN & CO. *v.* UNITED STATES (No. 140). KRAEMER & FOSTER *v.* UNITED STATES (No. 141).[1]

OLIVE OIL FOR MANUFACTURING OR MECHANICAL PURPOSES.

The result of chemical tests as here shown is inconclusive, and in view of the greater number and experience of the witnesses for the importers as to the appearance, taste, and smell of the oils, and further in view of the fact that the oils here were actually imported and sold as mechanical oils and for use as mechanical oils, the importation must be deemed olive oil for manufacturing or mechanical purposes, worth not more than 60 cents per gallon, and as such it was free of duty under paragraph 626, tariff act of 1897.—Holbrook *v.* United States (1 Ct. Cust. Appls., 263; T. D. 31317.)

United States Court of Customs Appeals, November 22, 1911.

TRANSFERRED from United States Circuit Court for Southern District of New York, Abstract 21336 (T. D. 29790).

[Reversed.]

*Brown & Gerry* for appellants.

*William L. Wemple,* Assistant Attorney General (*Charles E. McNabb* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise involved in these cases is olive oil, which was imported in various shipments to this country from Greece, Sicily, and Turkey under the tariff act of 1897. Paragraph 40 of that act laid a duty of 40 cents a gallon upon olive oil not specially provided

---

for.   Paragraph 626 of the same act allowed free entry to olive oil for manufacturing or mechanical purposes, fit only for such use and valued at not more than 60 cents per gallon.   The collector classified the importations now before the court under the paragraph first above named, and assessed duty upon them at the rate therein provided.   The importers severally protested against this ruling, and contended that the importations fell within the second paragraph above stated, and were therefore entitled to entry free of duty.

It is conceded that the importations are olive oil; that the oil was valued at not more than 60 cents per gallon; that if the oil was for manufacturing or mechanical purposes and fit only for such use, it was free of duty; and that unless it was for manufacturing or mechanical purposes and fit only for such use, it was dutiable at 40 cents per gallon as assessed by the collector.   The sole question, therefore, is whether or not the olive oil composing these importations was for manufacturing or mechanical purposes and fit only for such use.

It appears from the testimony that olive oils are used either for food or for manufacturing purposes.   The latter class is generally called commercial or mechanical oil.   The mechanical oil is used in making soaps and in other industries.   The edible oil is manufactured with great care from the best fruit, whereas the mechanical oil is pressed from inferior or decayed olives, with little care for cleanliness, or is sometimes pressed from better olives after all the edible oil has been extracted from them.   The edible oil is carefully handled and packed, whereas the mechanical oil is often handled locally in vessels of goatskin and is often transported in secondhand petroleum barrels. If the edible oil becomes so rancid as to be unfit for food, it may nevertheless be fit for mechanical use.   However, all such mechanical oil is not simply rancid edible oil, for much of it is given the lower rating because it is naturally not bland and smooth, but possesses a rank and acrid taste and an unpleasant odor even when fresh.   The olives grown in some districts are recognized as unfit for the production of edible oil, and the trade in such case ranks all the oil so produced there as mechanical oil.   The class to which any given oil belongs is ascertained from its appearance, its taste, and smell.   These proofs are also aided to some extent by chemical tests, but such tests are not conclusive.   If such a test shows a high proportion of free fatty acid in the oil, it tends to show that the oil is not edible; if the free fatty acid is slight, it is more probable that the oil is edible.   On the other hand, sometimes an oil is found with a relatively large measure of free fatty acid and is nevertheless undoubtedly edible; while, conversely, there are oils with little such acid that are palpably unfit for food.   There are different grades both of edible and mechanical oils, and sometimes the better grades of the inferior oil approach very near in quality to the inferior grades of the better oil.   Yet even in such cases experts are capable of distinguishing between the two by

sight, taste, and smell, aided by a knowledge of the province from which the oil comes; and witnesses say that there is rarely less than a difference of 20 cents a gallon in the price of inferior edible oils and superior mechanical oils.

The oils involved in this case, so far as appears, were packed in inferior barrels, being secondhand petroleum barrels, such as would not be used for edible oil. They were in fact bought, sold, and used as and for mechanical oil and that alone. The prices paid for the oil are consistent with this statement. Their value, as first above stated, also fell within the limit fixed by the paragraph as the maximum value of mechanical oil. In addition to this, numerous witnesses who qualify as experts and who gave the oils careful examination, testify that the oils in question were not edible, but were mechanical oils and fit only for such use.

In contradiction to this evidence the Government produced expert chemical testimony concerning the importations, showing a relatively small percentage of free fatty acids in most of them, supplementing this also by the testimony of the same witnesses concerning the appearance, taste, and smell of the oils. The contention of the Government is that the testimony taken together fails to show that the oils are fit only for manufacturing or mechanical purposes. The Government contends that even if the oils were actually used for mechanical purposes they were nevertheless not unfit for food purposes.

In view, however, of the inconclusiveness of the chemical tests, and in view of the greater number and experience of the importers' witnesses in so far as the testimony related to the appearance, taste, and smell of the oils, and in view of the fact that the oils were actually imported and sold as and for mechanical oils, it seems to be established that the oils fell within the class of manufacturing and mechanical oils created by paragraph 626 above referred to. It is true that some of the oils might possibly have been capable of use for food purposes, but such an use, while not an impossible one, would nevertheless have been a perverted and unfit use. The use and the only use for which the oils in question were really fit was the use to which they were actually applied—that is, for manufacturing and mechanical purposes.

The case of Holbrook *v.* United States (1 Ct. Cust. Appls., 263; T. D. 31317) is a case very similar to the one at bar in respect both to the issue and the testimony, and the reported decision in that case covers the entire subject with such fullness as to make a more extended discussion of this case unnecessary. Indeed, the present decision may be said to be a corollary of that in the case just cited in so far as that expression may properly apply to any ruling involving a review of testimony.

In the view above indicated the ruling below should have been for the appellants, and the decision against them is therefore *reversed.*

DE VRIES, Judge, did not sit in these cases.